**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SOUTHERN-OWNERS INSURANCE
COMPANY,

      Plaintiff,

vs.                                                     Case No. 3:10-cv-390-J-37MCR

DEBORAH LANE WIGGINS, as Personal
Representative of the Estate of ROBERT
LANE WIGGINS, SUNSHINE MART, INC.,
VENKAT KANDALA, GIANT
JACKSONVILLE, LLC, GIANT OIL, INC.,
BP PRODUCTS NORTH AMERICA, INC.,
MOHAMMED TAUHIDUL KHAN, DAVID
SOHM, DEBORAH SOHM, and SRINIVAS
BIKKUMANLA,

      Defendants.

## ORDER

This cause is before the Court on the following:

1. Defendants/Counterclaim/Crossclaim Plaintiffs Giant Jacksonville, LLC and Giant Oil, Inc.'s Motion for Summary Judgment (Doc. No. 87), filed October 17, 2011;

2. Appendix of Documents in Support of Defendants/Counterclaim/Crossclaim Plaintiffs Giant Jacksonville, LLC and Giant Oil, Inc.'s Motion for Summary Judgment (Doc. No. 88), filed October 17, 2011;

3. Plaintiff, Southern-Owners Insurance Company's Motion for Summary Judgment (Doc. No. 89), filed October 17, 2011, and its separately filed exhibits (Doc. Nos. 90, 91);

4. Notice of Filing Redacted Document to Appendix (Doc. No. 92), filed October

18, 2011;

5. Southern-Owners' Response in Opposition to Giant Oil's and Giant Jacksonville's Motion for Summary Judgment (Doc. No. 93), filed October 31, 2011;

6. Response of Defendant, Deborah Lane Wiggins, as Personal Representative of the Estate of Robert Lane Wigging, to Plaintiff's Motion for Summary Judgment (Doc. No. 94), filed October 31, 2011;

7. Defendants/Counterclaim/Crossclaim Plaintiffs Giant Jacksonville, LLC and Giant Oil, Inc.'s Response in Opposition to Plaintiff Southern-Owners Insurance Company's Motion for Summary Judgment (Doc. No. 95), filed November 3, 2011;

8. Defendants/Counterclaim/Crossclaim Plaintiffs Giant Jacksonville, LLC and Giant Oil, Inc.'s Notice of Filing (Doc. No. 100), filed November 9, 2011; and

9. Southern-Owners' Reply (Doc. No. 101), filed November 15, 2011.

## BACKGROUND

Plaintiff Southern-Owners Insurance Company (the "Insurer" or "Insurance Company") brought this action against the parties in a state court lawsuit which arose from the events leading to the death of Robert Wiggins. In the state court action, Mr. Wiggins' estate brought wrongful death claims against Sunshine Mart, Inc., Venkat Kandala, Giant Jacksonville, LLC, Giant Oil, Inc., BP Products North America, Inc., Mohammed Tauhidul Khan, and Srinivas Bikkumanla based on Sunshine Mart's sale of liquor to a minor, which was in violation of state law. (Doc. No. 91, pp. 2-34.)

Prior to Mr. Wiggins' death, the Insurance Company issued a commercial general

liability policy (the "Policy") to Defendant Sunshine Mart, Inc. ("Sunshine Mart").[1] Defendants Giant Jacksonville, LLC and Giant Oil, Inc. (the "Giant Defendants") were additional insureds under the Policy.[2] After the state court action was filed, the Insurance Company agreed to defend Sunshine Mart and Kandala under a reservation of rights. (Doc. No. 88-13.) Giant Jacksonville then made a demand from the Insurance Company for coverage and a defense, which the Insurance Company denied. (Doc. Nos. 88-16, 88-17.)

In this lawsuit, the Insurance Company seeks a declaration that the commercial general liability insurance policy (the "Policy") it issued to Sunshine Mart does not require it to insure, indemnify or defend Sunshine Mart or the other insureds under the Policy. The Giant Defendants assert counterclaims and crossclaims alleging that the Policy does provide such coverage. The parties filed cross motions for summary judgment, which are fully briefed and ripe for adjudication.

**APPLICABLE STANDARDS**

This Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[1] The Policy is attached to the Amended Complaint (Doc. No. 17) as Exhibit A. Plaintiff contends Exhibit A is a copy of the complete policy. No party has suggested otherwise. Therefore, the Court will deem (for the purposes of this Order) Exhibit A as the insurance policy in effect during the events giving rise to this lawsuit. In this Order, citations to pages contained in Doc. No. 17-1 as Ins. Policy, Part A, p. XX, and citations to pages contained in Doc. No. 17-2 as Ins. Policy, Part B, p. XX.

[2] The parties have stipulated that the Giant Defendants are additional insureds under the Policy. This stipulation was necessary because the "additional insured" endorsement names "Giant LLC" as the name of the organization which qualifies as an additional insured under the policy. (*See* Ins. Policy, Part A, p. 12.)

(1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004).  An issue of fact is "material" under the applicable substantive law if it might affect the outcome of the case.  *Hickson Corp.*, 357 F.3d at 1259.  An issue of fact is "genuine" if, taken as a whole, the record could lead a rational trier of fact to find for the nonmoving party.  *Id.* at 1260.  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.*; *Anderson*, 477 U.S. at 251–52.

The party moving for summary judgment has the burden of proving (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255.

The court may not weigh conflicting evidence or weigh the credibility of the parties.  *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993).  If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, the court must not grant summary judgment.  *Id.*  Summary judgment must be granted, however, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.  In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required."  *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

**ANALYSIS**

The determinative question in this lawsuit is whether the events alleged in the state court action are excluded from coverage under the Policy by its liquor liability exclusion.[3] Before construing the Policy, the Court will discuss the standards for the interpretation of an insurance contract under Florida law. The Court then construes the Policy in two steps. First, the Court determines how the Policy describes and delineates the parties and their interests. Second, after considering the ordering of interests under the Policy, the Court determines the applicability of the Policy's liquor liability exclusion.

    A.    <u>Interpretation of the Insurance Contract</u>

"The interpretation of an insurance contract is a question of law." *Kattoum v. N.H. Indem. Co.*, 968 So. 2d 602, 604 (Fla. 2d DCA 2007). It is undisputed that Florida law governs the interpretation of the Policy at issue in this case. "Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (internal citation omitted). As such, the Court will construe the scope and extent of insurance coverage in this case in accordance with the plain language of the Policy.

If the Court is unable to discern a single plain meaning of a Policy provision because the Policy language is susceptible to more than one reasonable interpretation, then the

---

[3] According to a leading treatise on insurance law, "Standard commercial general liability policies generally exclude bodily injury or property damage arising from the insured's manufacture distribution, or sale of alcoholic beverages." 9A Steven Plitt, et al., Couch on Insurance Third § 129:32 (2005). Insurance companies exclude this liability from general policies so that "those who want such coverage must specifically request it and pay corresponding additional premiums, thereby allowing the insurer to assess the specific risks based on the nature and location of the business, as well as the general character and history of the insured." *Id.*

Court must adopt the interpretation that favors the insured and provides coverage. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) (internal citation omitted). However, the Court will not adopt "a strained and unnatural construction" of the Policy's language "in order to create an uncertainty or ambiguity." *Health Options, Inc. v. Kabeller*, 932 So. 2d 416, 420 (Fla. 2d DCA 2006). Finally, the Court must interpret the Policy's terms in the context of the Policy as a whole and it will not consider "an isolated sentence in a Policy as determinative on the question of coverage." *Ellenwood v. S. United Life Ins. Co.*, 373 So. 2d 392, 395 (Fla. 1st DCA 1979); *see also* Fla. Stat. § 627.419(1) ("Every insurance contract shall be construed according to the entirety of the terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto.").

    B.    <u>What are the Interests of the Parties under the Policy?</u>

In order to construe the liquor liability exclusion, the Court must first consider how the Policy describes and delineates between the parties and their interests. The contracting parties obviously each have tangible interests. Florida law requires every insurance policy name the parties to the contract. *See* Fla. Stat. § 627.413. Here, the declarations identify the Insurance Company and Sunshine Mart, which is identified as the "insured." (Ins. Policy, Part A, p. 5.)

The part of the Policy describing liability coverage, which is entitled "Commercial General Liability Coverage Form" (the "General Liability Form"), also identifies various individuals with interests under the Policy. (See Ins. Policy, Part B, pp. 52-72.) In its preamble, the General Liability Form notes:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying

6

>as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.
>
>The word "insured" means any person or organization qualifying as such under Section II - Who is An Insured.

(*Id.* at 52.) The preamble, therefore, sets out a distinction between a "Named Insured" and someone who is an "insured."

The Policy does not define who is a "Named Insured." However, in various provisions, the Policy places that term in context by using phrases such as "the Named Insured shown in the Declarations" (*id.*); "[a]ny organization you newly acquire or form . . . will qualify as a Named Insured . . ." (*id.* at 63); ". . . that is not shown as a Named Insured in the Declarations" (*id.* at 64); and "[a]t the close of each audit period we will . . . send notice to the first Named Insured" (*id.* at 66-67). Since Sunshine Mart purchased the Policy and was the only insured identified in the Policy's declaration, the Court concludes that the plain and reasonable interpretation of the Policy is that Sunshine Mart is a Named Insured.

But who, in contrast, is an "insured" under the Policy? As noted above, the preamble to the General Liability Form states, "The word 'insured' means any person or organization qualifying as such under Section II - Who is An Insured." (*Id.* at 52.) Thus, the Court turns to Section II of the General Liability Form (hereinafter just "Section II").

Section II consists of four numbered paragraphs, each of which has several subparagraphs. (*Id.* at 62-64.) The first numbered paragraph begins, "If you are designated in the Declarations as . . . ", and continues in five alternative subparagraphs, each of which begins by describing the Named Insured (i.e., "you") as an individual, business entity or trust. (*Id.* at 62-63.) The first sentence of each subparagraph notes that the Named Insured is "an insured." (*Id.*) The remaining portions of each subparagraph

7

describe other individuals who are insured: the Named Insured's spouse, in the case of an individual (*id.* at 62); the members or partners, and their spouses, of a partnership or joint venture (*id.*); the members and managers of a limited liability company (*id.*); the "executive officers," directors, and stockholders of other business organizations (*id.* at 62-63); and, if the Named Insured is a trust, its trustee(s) (*Id.* at 63). Section II's remaining numbered paragraphs similarly describe classes of individuals who may qualify as an insured under the Policy or, in the case of the fourth paragraph, the circumstances under which newly acquired or formed organizations "qualify as a Named Insured."[4] (*Id.*).

Not only does the Policy distinguish between a "Named Insured" and an "insured," but it also uses a severability clause to distinctly define the interests of a "Named Insured" and an "insured." The clause, which is entitled "Separation Of Insureds," provides as follows:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> a. As if each Named Insured were the only Named Insured; and
>
> b. Separately to each insured against whom claim is made or "suit" is brought.

(Ins. Policy, Part B, p. 67.)

In Florida, a severability clause such as this operates to create separate insurable interests in each insured. *Mactown, Inc. v. Cont'l Ins. Co.*, 716 So. 2d 289 (Fla. 3d DCA 1998); *Premier Ins. Co. v. Adams*, 632 So. 2d 1054 (Fla. 5th DCA 1994); *Liberty Mutual Ins. Co. v. Sentry Ins. Co.*, 288 So. 2d 556 (Fla. 2d DCA 1974). Thus, the Court must

---

[4] The format of Section II reinforces the distinction between a "Named Insured" and an "insured."

8

separately determine the Insurance Company's obligations with respect to each insured. *Liberty Mutual Ins. Co.*, 288 So. 2d at 559.

In view of the above, the Court now turns to considering the Giant Defendants' interests under the Policy. The Giant Defendants can be either a Named Insured (or an organization qualifying as a Named Insured) or an insured under the Policy. The Giant Defendants are not named in the Policy declarations. They also are not newly acquired or formed organizations that "qualify as a Named Insured" under the Policy, or otherwise qualify as an insured under the <u>unmodified version</u> of Section II of the General Liability Form.

The Policy, however, contains an endorsement which "changes the Policy." (Ins. Policy, Part A, p. 12.) The endorsement is entitled, "Additional Insured - Managers or Lessors of Premises." (*Id.*) The endorsement identifies the Giant Defendants (referred to as "Giant LLC") as an "additional insured." (*Id.*) The endorsement modifies two sections of the Policy, one of which is not relevant. To the extent it is relevant, the endorsement amends Section II of the General Liability Form

> to include as an additional insured the person or organization shown in the Schedule [i.e., the Giant Defendants] but only with respect to liability arising out of ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:
>
> This insurance does not apply to:
>
> 1. Any "occurrence" which takes place after you cease to be a tenant in that premises.
>
> 2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

(Ins. Policy, Part A, p. 12.) Thus, the Giant Defendants' interests under the Policy are

9

created and described by the endorsement, which identifies them as "additional insureds."

The Court has considered whether the use of the term "additional insured" in the endorsement creates an ambiguity as to whether the Giant Defendants are Named Insureds or insureds. The Court concludes that no such ambiguity exists under a plain reading of the Policy. The endorsement does not use the term Named Insured to refer to the Giant Defendants; it uses the term additional insured. Further, the endorsement modifies Section II of the General Liability Form, which specifically sets forth who qualifies as an insured and what organizations may qualify as a Named Insured.

Moreover, the language used in the endorsement would make no sense if the Court were to construe the endorsement as adding the Giant Defendants as Named Insureds. The endorsement contains a qualifier limiting coverage to "liability arising out of ownership, maintenance or use of that part of the premises leased to <u>you</u>." As noted above, "the words 'you' and 'your' refer to the <u>Named Insured</u> shown in the Declarations, and any other person or organization qualifying as a <u>Named Insured</u> under the policy." (Ins. Policy, Part B, p. 52 (emphasis added).) This phrase – "premises leased to <u>you</u>" – can only refer to Sunshine Mart leasing the premises from the Giant Defendants, not *vice versa*, and it makes sense only if the Giant Defendants are insureds under the Policy, not Named Insureds.

In sum, the Court concludes that Sunshine Mart is the only Named Insured under the Policy, and that the Giant Defendants are insureds.

C.  <u>Does the Liquor Liability Exclusion Apply?</u>

With regard to the commercial general liability insurance policy at issue in this case, the parties' dispute turns on the applicability of the Policy's liquor liability exclusion. The

10

Policy insures generally against damages arising from bodily injuries, but it also contains provisions excluding specific risks. (Ins. Policy, Part B, p. 52.) One of these later provisions excludes coverage for liquor liability (the "liquor liability exclusion"). The liquor liability exclusion provides:

> This insurance does not apply to . . . "Bodily injury" or "property damage" for which <u>any insured</u> may be held liable by reason of:
>
> (1) Causing or contributing to the intoxication of any person;
>
> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
>
> This exclusion applies only if <u>you</u> are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

(*Id.* at 53 (emphasis added).) As noted above, the "you" in the final sentence of the exclusion does not refer to all insureds. Rather, it refers only to "the <u>Named Insured</u> shown in the Declarations, and any other person or organization qualifying as a <u>Named Insured</u> under the policy." (*Id.* at 52 (emphasis added).) Here, as discussed above, the only Named Insured is Sunshine Mart. Thus, under a plain reading, the exclusion applies only if Sunshine Mart is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

The Giant Defendants contend that the use of the term "you" in the final sentence of the liquor liability exclusion is ambiguous. The Court does not agree. The use of the term "you" in the exclusion is consistent with how that term is defined in the preamble of the General Liability Form. When read in context, nothing in the Policy suggests that the term is used in the exclusion in an inconsistent manner. Thus, it is of no moment that the

11

Giant Defendants are not in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. Sunshine Mart is in that business, and that is what counts.

The Giant Defendants also argue that the provisions of the Policy should be construed such that they, as separate insureds under the Policy, do not fall within the scope of the liquor liability exclusion. This argument relies upon the notion that the Giant Defendants have separate insurable interests under the Policy. The case offered in support of this argument by the Giant Defendants is inapposite, however. In *Premier Insurance Co. v. Adams*, 632 So. 2d 1054 (Fla. 5th DCA 1994), the court rejected an insurer's reliance on an intentional act exclusion to deny the defense of a negligent supervision action against an insured parent arising out of an incident of sexual molestation perpetrated by an insured child. *Id.* at 1055.

The exclusion at issue in *Premier Insurance* excluded coverage for claims of "bodily injury . . . which is expected or intended by any insured." *Id.* at 1055. The insurer argued that the term "any insured" excluded all insured persons, not just the perpetrator. *Id.* The policy in Premier Insurance, however, contained a severability clause which stated that the policy applied "separately to each insured." *Id.* at 1056. The court relied upon the severability clause to reject the insurer's argument, reasoning:

> [W]hen an insurance policy is ambiguous or fairly susceptible to two reasonable interpretations, one of which is in favor of the insured and one of which is in favor of the insurer, the policy must be construed strictly against the insurer as drafter of the policy . . . . [T]he most plausible interpretation is that the exclusionary clause is to exclude coverage [only] for the separate insurable interest of that insured who intentionally causes the injury.

*Id.* at 1057. Unlike the policy at issue in *Premier Insurance*, however, the Policy in this case contains an exclusion which refers to the actions of a single Named Insured, Sunshine Mart. It is, therefore, unambiguous.

12

Furthermore, it is of no moment that the severability clause operates to create separate insurable interests in each insured. The Policy's liquor liability exclusion plainly applies to bodily injuries for which <u>any insured</u> may be liable where the Named Insured is "in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages." The exclusion, therefore, acts to extinguish <u>all</u> of the Insurer's liability as to <u>any insured</u> where Sunshine Mart sells alcoholic beverages (which, according to the allegations of the state court action, it did). The language used in the liquor liability exclusion is clear, and it unambiguously applies the exclusion to the separate insurable interests of each insured.[5]

\* \* \* \* \*

There is no genuine, material dispute that the only Named Insured under the Policy allegedly sold alcoholic beverages to minors. Each and every claim raised in the state court action explicitly refers to or relies upon the sale of alcohol to minors by Sunshine Mart, its officers, and its employees. Thus, each claim necessarily satisfies at least two of the conditions of the liquor liability exclusion. The Insurance Company is not obligated, therefore, to "pay those sums that the insured becomes legally obligated to pay as damages" or to "defend the insured against" the state court action.

---

[5] In this regard, this case is more closely analogous to the exclusion construed in *Valero v. Fla. Ins. Guar. Ass'n Inc.*, 59 So. 3d 1166 (Fla. 4th DCA 2011). When the insurance contract in this case is read as a whole – like the contract in *Valero* – the application of the severability clause does not create an ambiguity.

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants/Counterclaim/Crossclaim Plaintiffs Giant Jacksonville, LLC and Giant Oil, Inc.'s Motion for Summary Judgment (Doc. No. 87) is **DENIED**.

2. Plaintiff, Southern-Owners Insurance Company's Motion for Summary Judgment (Doc. No. 89) is **GRANTED**.

3. The parties are directed to notify the Court, on or before February 15, 2012, if there are any claims, counterclaims, or crossclaims that remain pending following the entry of this Order.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on February 9, 2012.

ROY B. DALTON JR.
United States District Judge

Copies:

counsel of record